

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| ERNEST JAMES JOHNSON, | * | CIV 05-4062 |
| | * | |
| Petitioner, | * | |
| | * | MEMORANDUM OPINION |
| -vs- | * | AND ORDER |
| | * | |
| DOUGLAS WEBER, Warden, | * | |
| | * | |
| Respondent. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Petitioner, Ernest James Johnson, an inmate at the Mike Durfee State Prison, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed an Answer and moved to dismiss the Petition (Doc. 14). Also pending are Petitioner's Motion to Appoint Counsel (Doc. 16) and Motion to Amend/Correct (Doc. 18).

## JURISDICTION

Petitioner was convicted in Minnehaha County, South Dakota, and is currently in custody in South Dakota pursuant to a judgment of a South Dakota State Court. The pending matter is therefore properly before this Court pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner was first indicted by a grand jury in Minnehaha County, South Dakota, on March 15, 2001. (CR. 01-996, Second Judicial Circuit, Minnehaha County) The charges contained in the first indictment included first degree petty theft on October 20, 2000   (Count I), second degree burglary on April 18, 2000 (Count II), second degree burglary on March 5, 2001 (Count III) and simple assault on March 5, 2001 (Count IV). On April 26, 2001, the Grand Jury issued a new indictment which corrected the date of the incident charged in Count 1 (changing the date from October 20, *2000* to October 20, *1999*). Ultimately, the state dismissed the charges contained in

Count I, and the case proceeded to trial on Counts II through IV.  On March 6, 2002, Petitioner was convicted by a jury in the Second Judicial Circuit, Minnehaha County, South Dakota, of two counts of burglary in the second degree and one count of simple assault.  On April 30, 2002, Judge Peter Lieberman sentenced Petitioner to fifteen (15) years imprisonment in the South Dakota State Penitentiary with eight (8) years suspended for each second degree burglary count, the sentences to be served consecutively.  No additional sentence was imposed for the simple assault conviction.

Petitioner appealed his conviction to the South Dakota Supreme Court.  (Supreme Court of South Dakota No. 22397) Petitioner raised the following issues on direct appeal:

1.   Whether the trial court erred in denying the defendant's motion to sever all of the charges in this case?

2.   Whether the trial court erred in denying the defendant's motion to suppress a witness' in-court identification of him as the perpetrator in the April 18, 2000 offense?

3.   Whether the trial court erred in denying the defendant's motion for mistrial based upon the fact that the jurors had seen him being let into a locked room while in the custody of a plain-clothes officer?

The South Dakota Supreme Court summarily affirmed Petitioner's conviction on September 3, 2003.  State v. Johnson, 703 N.W.2d 670 (S.D. 2003).

Petitioner filed a *pro se* State habeas corpus action on October 7, 2003.  (Civ. No. 03-2258, Second Judicial Circuit, Minnehaha County).  He raised the following grounds for relief in his initial *pro se* petition:

1.   The court erred by not dismissing the second indictment the State charged me with.  The first Indictment charging me with Count I petty theft 1st Degree, Ct. 2 Burglary 2nd Degree, Ct. 3 Burglary 2nd Degree, and Simple Assault was obtained by the State in March, 2001.  I was arraigned in the Second Judicial Circuit Court by Honorable Judge Lieberman on the first Indictment March of 2001.  After being in jail for two months, for the first Indictment I was Indicted again for the SAME chargess.  May 7, 2001 I was arraigned on the Second Indictment.  However, the second arraignment took place in a different courtroom 1-A, and a different Judge, different states attorney, and I even had a different attorney that day.  The only thing that was the same is

2

the chargess, and me.  The first Indictment was never dismissed.  I wasn't arraigned in Judge Lieberman courtroom on May 7, 2001.  My attorney was ineffective in contesting the two Indictments.

2.  The Court erred in not dismissing the second Indictment after the States eye-witness (Ms Lori Hayungs) testified at trial that she did in fact change her testimony at the second Grand Jury hearing.  She admitted to giving two different testimonies to the Grand Jury for one charge.  My counsel was ineffective in not properly attempting to exclude the witness testimony at trial.

3.  The States attorney improperly influenced and, or tampered with the eye-witness Ms (Lori Hayungs) by informing her that the Defendant would be charged with other crimes.  This was done before the eye-witness testified before the Grand Jury the second time.

4.  The trial court erred by not suppressing the In-court identification by eye-witness Ms (Lori Hayungs) after it held the Line-up procedure used was impermissibly suggestive.  My counsel was ineffective in not properly attempting to exclude the eye witness (Lori Hayungs) tainted testimony, In-court identification.

5.  Violation of exclusion and sequestering order.  The court erred in allowing the State's eye-witness (Ms. Lori Hayungs) to sit in the courtroom during Defendants motions hearings.   After the State's eye-witness (Ms Lori Hayungs) failed to identify the Defendant in photo line-up she was allowed to sit in the courtroom during Defense motion hearings.  The hearings was held on four (4) different dates.  July 3, 2001, July 6, 2001, August 17, 2001 and September 24, 2001.  This allowing eye-witness (Ms Lori Hayungs) to see defendant and to hear defense testimony by Dr Sannito.  She was also allowed to see, and hear other evidence presented by both counsels.  This eye-witness (Ms Lori Hayungs) came to Court three (3) times before she testified on August 17, 2001 her in-court identification of me.  The Judge had gave an order sequestering all witnesses.  This witness was allowed to identify, and testify at my trial.    In the alternative, my attorney was ineffective in not properly contesting this witness testimony.

6.  The Court erred by not correcting the statement made by the States attorney to the Jury pool.  The States attorney told the jury pool of about 23 Jurors that "Second Degree Burglary is not a crime of violence" (sic) and "even if I was found guilty of it I'd get a slap on the hand" The fact is, Second Degree Burglary is classified as a violent crime by this State.  Also, 15 years or 30

3

years is not a slap on the hand.  In the alternative my counsel was ineffective in not seeking proper remedy of the court for this prejudicial statement.

7.   The court erred by not severing the two (Second Degree Burglary) charges against me.  Those two chargess were 11 months apart.  States attorney knew those two crimes were not related to each other because he has my record that PROVES I was in the state of Michigan (10) of the (11) months time lapses between the two Second Degree Burglary I was charged with.

8.   The State's Attorney manufactured two HOME MADE VIDEO TAPES of crimes scenes only days before my trial.  The jury was allowed to see those home made video tapes as the State's Attorney narrated them.  My attorney was ineffective for not opposing introduction of those home made video tapes.

9.   The jury was also allowed to see me being locked into a room during trial.  One of the jurors ask the bailiff about the occupation of the officer locking me in the room.  The trial court erred in not granting a mistrial after the jury was exposed to this prejudicial information.  The bailiff informed the Judge about what had happened, and then the bailiff testified to these facts.

10.  The Court erred by not allowing me to see and review a completed presentence report.  At the time of the sentence the Judge ask if I had anything to say before he sentence me?  I ask if I could review the presentence report?  The Judge ask the State's Attorney for the presentence report, but there wasn't one.  I was then sentence to 30 years in prison with 16 years suspended.  Two-15 years consecutive.

11.  The sentencings I received as shocking to the conscience.  I was sentence to 15-years with eight (8) years suspended for 2nd Degree Burglary, and another 15 years with 8-years suspended for 2nd Degree Burglary.  These sentence are consecutive giving me 30-years with 16-years suspended.  These sentences are shocking to the conscience because both convictions are based on intent.  Nothing was actually burglarized, because nothing was actually taken, nothing was actually damaged, and no one was hurt.  For an intention conviction, such as these two are, 30 years is very shocking.

12.  Court erred in denying my motion to change attorneys represent self or co-counsel.  The second time Ken Tschetter came to jail to interview me he made it clear he thought I was guilty and I'd spend some time in prison.  He did this before he ask me anything.  We disagreed from the very beginning.  I wrote Jeff Larson and told him what Ken said.  I ask him to appoint me another attorney.  I wrote Judge Lieberman asking him to remove Ken

4

Tschetter from my case. Judge Lieberman never answered my letter, but Ken Tschetter , and Jeff Larson both came to jail to see me one day. Ken told me "It is impossible for you to have a fair trial in the State of South Dakota because you are black," and the only people who'd have it worse than you are the Natives." Jeff agreed with Ken. I did not believe him then, so I wrote the Judge another letter. He still did not answer. I wrote the South Dakota State bar, and they said only the Judge can remove him. I spent all of my time trial to get a fair trial. Ken Tschetter was only going so far, and that was to keep himself from looking bad. I never had a chance.

On October 10, 2003, Judge Gene Paul Kean, Second Judicial Circuit, Minnehaha County, appointed the Minnehaha County Public Advocate's office to represent Petitioner on his state habeas claim. On June 17, 2004, The Public Advocate filed an Amended Application for Writ of Habeas Corpus on Petitioner's behalf. The Amended Application cited six grounds for relief:

1.    On March 15, 2001, Petitioner was charged by Indictment with offenses arising out of three separate incidents. Count I of the Indictment charged Defendant with a Petty Theft from the Sears store that occurred on October 20, 1999. Count II of the Indictment charged Petitioner with Burglary 2nd Degree for entering the Child Services Office on April 18, 2000. Counts III and IV of the Indictment charged Burglary 2nd Degree and Simple Assault for an alleged incident at Queen City Wholesale on March 5, 2001.

A new Indictment was returned on April 26, 2001. This Indictment contained the same charges, but corrected an error in the dates contained in the first Indictment.

Petitioner's attorney, Kenneth Tschetter, filed a Motion to Sever the separate incidents alleged in the Indictment. As pointed out by Mr. Tschetter, the three incidents which were charged in one Indictment were not closely related in either time, or manner or execution. Therefore, joinder of those incidents was improper under SDCL 23A-6-23.

Judge Lieberman denied this request, in part, and allowed the Child Services and Queen City Wholesale incidents, Counts II, II and IV of the Indictment, to be tried together.

Joinder of these offenses for trial interfered with Petitioner's right to testified in his own defense because he could not testify about one incident without being forced to face cross-examination about the other incidents. Joinder of these offenses allowed the State's Attorney to argue that the person who

5

committed one offense must have committed the other because of alleged similarities in modus operandi, thus violating Petitioner's right to be tried only on the facts of each separate incident.

The Trial Court ruled that Count I of the Indictment would be severed, but the Trial Court allowed Counts II, II and IV to be tried together. This improper joinder was a fundamental error which deprived Petitioner of a fair trial as guaranteed by the Fifth Amendment to the U.S. Constitution and Art. VI, Sections 6 and 7 of the South Dakota Constitution.

2.     During the course of investigating the break-in of the Child Services offices, which is the subject of Count II of the Indictment, Sioux Falls Police Detectives showed several photographs and photographic line-ups to Lori Hayungs, the main eye-witness to this crime.

In addition to being shown photographs of the Petitioner, Ms. Hayungs was present in the courtroom during several pre-trial hearings which Petitioner attended. When Ms. Hayungs was present at pre-trial hearings, Petitioner was the only black person in the courtroom. He was seated next to his defense attorney and he was wearing a jail uniform.

Petitioner's attorney, Ken Tschetter, made a pre-trial Motion to exclude testimony concerning Ms. Hayungs identification of Petitioner during the photographic lineups and showups. Mr. Tschetter also requested that Ms. Hayungs be prohibited from making an in-court identification of Petitioner.

The trial court excluded testimony about Ms. Hayungs' out of court identifications of Petitioner, but allowed Ms. Hayungs to identify Petitioner in the courtroom during the trial of this case despite the fact that she had seen Petitioner at several pre-trial hearings.

Allowing Ms. Hayungs to make an in-court identification of Petitioner during his trial after she had viewed impermissibly suggestive photographic lineups and showups, and after she had viewed Petitioner during pre-trial hearings violated Petitioner's right to fairly confront the witnesses against him and violated his right to a fair trial as guaranteed by the Fifth and Sixth Amendments to the U.S. Constitution and Art. VI, Section 7 of the South Dakota Constitution.

3.     At the close of the jury selection process for Petitioner's trial, the Trial Court took a recess. After the jurors had left the courtroom, Petitioner, who was in custody, was escorted to a holding cell by a plain clothes guard. As the guard

6

was in the process of opening the holding cell, the jury panel walked by the Petitioner and at least one juror questioned what was going on.

Despite the fact that Petitioner had been seen in the back hall of the Courthouse in the custody of a plain clothes Deputy Sheriff, the Trial Court denied Petitioner's motion for a mistrial.

Having this jury decide Petitioner's case after having seen him in an extremely prejudicial situation violated Petitioner's right to a fair trial by an impartial jury as guaranteed by the Fifth and Sixth Amendments to the U.S. Constitution and Art. VI, Sec. 7 of the South Dakota Constitution.

4. At several times during the pre-trial phase of his case, Petitioner asked the Trial Court to remove Ken Tschetter as his attorney. At a pre-trial hearing on February 26, 2002, Petitioner requested that he be allowed to act as co-counsel during his trial. This request was also denied by the trial court.

By prohibiting Petitioner from having an attorney of his choice, by prohibiting Petitioner from representing himself, and by prohibiting Petitioner from acting as co-counsel, the Trial Court violated Petitioner's rights as guaranteed by the Sixth Amendment to the U.S. Constitution and Art. VI, Sec. 7 of the South Dakota Constitution.

5. After the close of Petitioner's jury trial, a Court services officer was assigned to complete a pre-sentence investigation of Petitioner to assist the Court at his sentencing. At the sentencing hearing on April 22, 2002, Defendant specifically requested permission to read the pre-sentence report as allowed by SDCL 23A-27-7. The trial court did not allow Petitioner to read to pre-sentence report prior to sentencing him.

Denying Defendant the right to read his pre-sentence report deprived Petitioner of due process of the law as guaranteed by the Fifth Amendment to the U.S. Constitution and Art. VI, Section 7 of the South Dakota Constitution.

6. When Petitioner made his first appearance in Court, he requested that an attorney be appointed to represent him. His case was assigned to the Minnehaha County Public Defender's Office and Kenneth Tschetter was assigned to represent Petitioner.

During the course of representing Petitioner, Mr. Tschetter's performance fell below the acceptable standard for attorneys in that:

    (A)    Mr. Tschetter failed to object to the presence of witness Lori Hayungs during pre-trial hearings, thus tainting her identification of Petitioner at trial.

    (B)    Mr. Tschetter did not allow Petitioner to read his pre-sentence investigation report prior to sentencing as required by SDCL 23A-27-7

    (C)    Mr. Tschetter did not object to prejudicial videotapes of the crime scenes being admitted into evidence at the trial.

These actions and inactions by Mr. Tschetter prejudiced Petitioner. The errors were so significant that Petitioner was deprived of a fair trial and the outcome of his trial was affected in violation of the rights guaranteed to the Defendant by the Fifth and Sixth Amendments to the U.S. Constitution and Art. VI, Sec. 7 of the South Dakota Constitution.

On June 17, 2004, Petitioner filed a *pro se* supplemental petition for writ of habeas corpus. In that petition, he cited the following ground for relief:

1.    Petitioner was denied effective assistance of counsel as stated at # 21 above which denied petitioner his rights to due process and equal protection of the law and a fair criminal trial as guaranteed by the fifth, sixth and fourteenth amendments of the Constitution and article VI, § 2,6,7,9,10 & 26 of the South Dakota State Constitution.

(Paragraph 21 listed the following complaints about Mr. Tschetter)

    (A)    Not contesting the fact there were two counts filed for one, or the same crime, burglary third degree and burglary second degree, on Queen City Wholesale.

    (B)    Not adequately objecting to the fact there was never a preliminary hearing for the second indictment's counts of May 1, 2001.

    (C)    Not commenting to the jury that Mr. Iosty's information to them that second degree burglary was not a crime of violence and would result in a slap on the hand if convicted was not true and prejudicial.

    (D)    Not informing the jury that an absolutely essential element of second degree burglary was remaining in the building for the purpose of committing burglary.

    (E)    Not attempting to impeach Ms. Hayungs testimony because it differed from the grand jury testimony.

    (F)    Not attempting to impeach Ms. Hayungs testimony because she gave two different testimonies to the grand jury for one crime.

8

(G)    Allowing Ms. Hayungs, who had been ordered to be sequestered during all proceedings, to be in the courtroom to hear testimony from defense witnesses.

(H)    Not protesting the procedure whereby state's witness, Ms. Hayungs, was allowed to view several color photographs taken at the time of petition's arrest, before her in-court identification of petitioner.

(I)    Allowing the jury to view a video of two crime scenes which video had not been previously disclosed to the petitioner before it was shown in the courtroom in contradiction of SDCL 23a-27-7, and in violation of discovery motion filed on April 11, 2001.

(J)    Not asking questions of witnesses prepared by petitioner prior to trial, and not finding a way to enter petition's reason for being within the Queen City Wholesale Outlet, which was to apply for a job.

2.    Petitioner was not allowed an alternate counsel, to appear as co-counsel, nor represent himself as stated at § 11, 12,13, 14, 15, 16, Supra and §§ 20. Which denied petitioner his rights to due process and equal protection of the law, and a fair criminal trial as guaranteed by the fifth, sixth, and fourteenth amendments to the United States Constitution, and Article VI, §§ 2,6,7,9,10, and 26 of the South Dakota Constitution.

3.    The amended indictment counts as presented by the prosecution on May 1, 2001, (§§ 9 Supra) were never presented in a preliminary hearing which is required by law, SDCL 23a-6-19. The state's attorney eyewitness, Ms. Hayungs, testified at trial that she did in fact change her testimony at the amended (second) Grand Jury hearing. The court erred in not dismissing the amended or second indictment after the state's eyewitness admitted to giving two different testimonies to the grand jury for one, and the same alleged crime. These were errors that deprived petitioner of a fair trial as guaranteed by the fifth, sixth and fourteenth amendments to the United States Constitution, and Article VI, §§ 2,6,7,9, 10 and 26 of the South Dakota State Constitution.

4.    Violation of Exclusion and Sequestering Order. The Court erred in allowing the state's lone eyewitness, Ms. Hayungs, to sit in the courtroom during Motions hearings. On July 3, 2001, Judge Lieberman ordered that all witnesses be sequestered from the courtroom during motions hearings. However, on July 6, 2001, the state's witness, Ms. Hayungs, came to court and heard defense witness testimony. About halfway through the testimony of defense witness Dr. Sannito, Judge Lieberman stopped the proceedings and had the state's witness, Ms. Hayungs, removed from the courtroom. The

9

state's witness was allowed to hear evidence presented by both counsels, testimony by petitioner defense witness, and also witness petitioner in prison uniform seated next to his counsel. After clearly violating the sequester order, the state's witness, Ms. Hayungs, was still allowed to testify at petitioners trial. This was an error, which deprived petitioner of a fair trial as guaranteed by the Fifth Amendment to the United States Constitution and Article VI §§ 6 and 7 of the South Dakota State Constitution.

5.   The state's attorney manufactured two home video tapes of the crime scenes only days before the petitioner was set for trial. The jury was allowed to see these tapes as the states attorney narrated them. The petitioner was not permitted pre-trial disclosure of these videotapes. The videotapes of the crime scenes were absolutely necessary to prove an element of the crimes. Which denied petitioner rights to due process and equal protection of the law, and a fair criminal trial as guaranteed by the fifth, sixth, and fourteenth amendments of the United States Constitution and Article VI, §§ 2,6,7,9,10 and 26 of the South Dakota State Constitution.

6.   The Court erred by not allowing petitioner to review the presentence investigation that should have been completed prior to sentencing. At the time of sentencing, Judge Lieberman asked petitioner "Do you have anything to say before I pronounce sentence?" Petitioner said, "yes, I would like to see and review the presentence report before the court sentences me." Contrary to SDCL 23a-27-7, the Court did not allow petitioner to review the presentence investigation prior to sentencing. This denied the petitioner his rights to due process and equal protection of the law, and a fair criminal trial as guaranteed by the fifth, sixth, and fourteenth Amendments to the United States Constitution, and Article VI, § § 2,6,7,9, 10 and 26 of the South Dakota State Constitution.

7.   During the course of the investigation, the burglary at the Child Services Offices, which is the subject of Count II of the amended indictment. Sioux Falls police detectives showed several photographic lineups to Ms. Hayungs, the lone eyewitness to the alleged crime. Ms. Hayungs could not, and did not, identify petitioner in the first line up. In addition to being shown photographs of the petitioner, Ms. Hayungs was present in the courtroom during petitioner's pretrial motion hearing to suppress her in-court identification of him. When Ms. Hayungs was present at these Motion hearings, petitioner was the only black person in the courtroom and was seated next to his attorney in a prison uniform. Because Ms. Hayungs viewed impermissible, suggestive photographic lineups and viewed petitioner at Motion hearing, petitioner's attorney requested that Ms. Hayungs be prohibited from making an in-court identification of petitioner. That request

was denied and Ms. Hayungs was allowed to testify that she identified the petitioner.   This violated petitioner's right to fairly confront witnesses against him and violated his right to a fair trial as guaranteed by the Fifth and Sixth Amendments to the United States Constitution and Article VI, Section 7 of the South Dakota Constitution.

8.   The amended indictment was returned on May 1, 2001.  Charging petitioner with four counts from three separate incidents in three different years.  Count I occurred on October 20, 1999.  Count II occurred on April 18, 2000.  Count II and IV occurred on March 5, 2001.  These three incidents are not related in any way.   The dates and times are not even close.   The manner of execution was not the same.  Therefore, joinder those incidents for trial was not proper under SDCL 23a-6-23, and prejudicial against petitioner.  Joinder of these offenses for trial violated petitioner's right to testify in his own defense because he could not testify about one incident without being <u>forced</u> to face cross-examination about the other three incidents.  Joinder of these offenses allowed the State's attorney to argue that the person who committed one offense must have committed them all.  This was even more prejudicial against petitioner because he is a black man being tried by an all white jury, thus violating petitioner's right to be tried only on the facts of each incident.  This improper joinder was a fundamental error, which deprived petitioner of a fair trial as guaranteed by the Fifth Amendment to the United States Constitution and Article VI, section 6 and 7 of the South Dakota Constitution.

9.   At the close of the jury selection process for petitioner's trial, the trial court took a recess.  A plain clothes detective was escorting petitioner, who was in custody, back to a holding cell.  As the detective opened the holding cell door, the jury panel walked by petitioner and spoke to the detective.  The bailiff testified to the fact that the jury questioned her about the detective.  She also testified she was sorry she didn't feel right about because the jury was exposed to this prejudicial situation.  The police detective did speak to the bailiff as they were going by us.  The trial court denied petitioner's motion for a mistrial.  Petitioner, a black male seen in custody by a white jury, was in fact an extremely prejudicial violation of petitioner's right to a fair trial by an <u>impartial</u> jury as guaranteed by the Fifth and Sixth Amendments to the United States Constitution and Article VI, section 7 of the South Dakota Constitution.

10.   The State's attorney improperly influenced and/or tampered with the Ms. Hayungs by informing her that petitioner will be charged with other crimes.  This information influenced the lone eyewitness into changing her testimony to the second Grand Jury.  Ms. Hayungs testified under oath at petitioner's

11

trial that she did in fact change her testimony. This violated petitioner's right to due process and to a fair trial as guaranteed by the Fifth, Sixth, Fourteenth Amendments to the United States Constitution and Article VI, Section 7 of the South Dakota Constitution.

11. The sentence petitioner received was shocking to the conscience. Petitioner was sentenced to 15 (fifteen) years with 8 (eight) years suspended for second degree burglary, and another 15 (fifteen) years with 8 (eight) suspended for second degree burglary. These sentences are running consecutive, giving petitioner a total of 30 (thirty) years with 16 (sixteen) years suspended. These sentences are shocking to the conscience because both convictions are based on intent. Nothing was damaged or taken and nobody was hurt. For an intent based conviction, such as these two are, a 30 (thirty) year conviction is extreme and shocking to the conscience.

Judge Kean conducted a hearing on Petitioner's state habeas claims on August 24, 2004. Judge Kean issued a letter decision on September 13, 2004, denying the writ in all respects except one, which he left open pending further information from the parties regarding the pre-sentence investigation report. Judge Kean held another evidentiary hearing on November 30, 2004. On April 4, 2005, Judge Kean entered Findings of Fact and Conclusions of Law denying Petitioner's application in its entirety. Judge Kean denied Petitioner's Motion for Certificate of Probable Cause on April 20, 2005. The South Dakota Supreme Court denied Petitioner's Motion for Certificate of Probable Cause on June 13, 2005.

Petitioner filed his federal habeas petition on May 9, 2005. He asserts fourteen grounds for habeas relief in his federal petition. Each ground asserted in the federal petition will be addressed in the Discussion portion of this Opinion.

## PRELIMINARY MOTIONS

Petitioner has moved for appointment of counsel to assist him with this federal habeas corpus action (Doc. 16). "There is no recognized constitutional right under the Sixth Amendment for the appointment of counsel in habeas corpus cases." Hoggard v. Purkett, 29 F.3d 469, 471 (8th Cir. 1994). Because a habeas action is civil in nature, the Sixth Amendment right to counsel applicable in criminal proceedings does not apply. Id.

12

The statutory basis for the appointment of counsel in a habeas case is found at 18 U.S.C. § 3006A(a)(2)(B) and Rules  6(a) & 8( c), Rules Governing Section 2254 Cases in United States District Courts,  Those statutes provide in relevant part:

**18 U.S.C. § 3006A(a)(2)(B):**

(2)  Whenever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who—
 **
(B) is seeking relief under section 2241, 2254, or 2255 of title 28

**Rule 6(a):**
If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.

**Rule 8( c):**
If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A. . . . These rules do not limit the appointment of counsel under § 3006A at any stage of the proceeding.

The appointment of counsel in a habeas case is discretionary when no evidentiary hearing is necessary.  <u>Hoggard</u>, 29 F.3d at 471 (citations omitted).  In this case, no evidentiary hearing is necessary, because the claims Petitioner makes here are virtually identical to those he made at the state court level, where an evidentiary hearing was held.        "In exercising its discretion, the district court should consider the legal complexity of the case, the factual complexity of the case, and the petitioner's ability to investigate and present his claims, along with any other relevant factors."  <u>Id.</u> Most importantly, "where the issues involved can be properly resolved on the basis of the state court record, a district court does not abuse its discretion in denying a request for court-appointed counsel."   Petitioner's motion for appointment of counsel will be DENIED.

Petitioner has also made a motion to amend/correct his federal habeas application (Doc. 18). Petitioner seeks to supplement his application with an additional ground for relief entitled "denial of effective assistance of counsel."  A review of Petitioner's motion indicates all of the matters Petitioner wishes to add to his application pertain to perceived failures of his state habeas corpus

13

counsel. "There is . . no right to counsel in either state or federal post-conviction relief proceedings. . . . Where there is no constitutional right to counsel there can be no right to effective assistance of counsel." Pollard v. Dalo, 28 F.3d 887, 888 (8th Cir. 1994) cert. den. 513 U.S. 1003, 115 S.Ct. 518, 130 L.Ed.2d 423 (1994), citing Wainwright v. Toona, 455 U.S. 586, 102 S.C. 1300, 71 LED.2d 475 (1982). Petitioner's motion to amend/correct will be DENIED.

## DISCUSSION

A state prisoner who believes he is incarcerated in violation of the Constitution or laws of the United States may file a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The federal courts are constrained, however by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), to exercise only a "limited and deferential review of underlying state court decisions." Osborne v. Purkett, 411 F.3d 911, 914 (8th Cir. 2005). A federal court may not grant a writ of habeas corpus unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in Supreme Court cases or if it confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from the Court's precedent." Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.C. 1495, 146 L.Ed.2d 389 (2000).

The state court's factual findings are presumed to be correct, and a federal habeas court may not disregard the presumption unless specific statutory exceptions are met. Thatsaphone v. Weber, 137 F.3d 1041, 1045 (8th Cir. 1998) cert. den. 523 U.S. 1130, 118 S.Ct. 1822, 140 L.Ed.2d 958 (1998); 28 U.S.C. § 2254(e). A federal habeas court "may not simply disagree with the state court's factual determinations. Instead it must conclude that the state court's findings lacked even fair support in the record." Marshall v. Lonberger, 459 U.S. 422, 432, 103 S.C. 843, 850, 74 L.Ed.2d 646 (1983). A federal habeas court may not issue the writ merely because it concludes the state court applied the clearly established federal law erroneously or incorrectly. Id. at 411, 120 S.C. at 1495. "Rather, that application must also be *unreasonable*." Id. (emphasis added).

14

The federal courts' review of state courts decisions is limited in another way: "the law of this circuit requires that an applicant for a writ of habeas corpus refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent constitutional issue in state court" before it will evaluate a claim. Ford v. Norris, 364 F.3d 916, 919 (8th Cir. 2004) (citations omitted, punctuation altered).  A petitioner's failure to exhaust in the state courts  a claim which does not state a federal constitutional claim, cognizable in federal habeas proceedings,   does   "not deprive a federal district court of the right to entertain other exhausted claims which do have their roots under the federal constitution." Martin v. Solem, 801 F.2d 324, 331 (8th Cir. 1986) (citations omitted).  See also Hall v. Iowa, 705 F.2d 283, 286 (8th Cir. 1983) cert. den. 464 U.S. 934, 104 S.Ct. 339, 78 L.Ed.2d 307 (1983) ("Nonexhausted state claims included in a federal habeas petition  and having no constitutional relevance should not deprive a federal district court of the right to entertain other exhausted claims which do have their roots under the federal Constitution."). Also, a "stay and abeyance" procedure may be  appropriate if a petitioner presents a petition "mixed" with exhausted and unexhausted claims.  Rhines v. Weber, 125 S.C. 1528, 1535 (2005).  No stay and abeyance is necessary, however, and dismissal is appropriate if the unexhausted claims are "plainly meritless."  Id.; 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

**Petitioner's First Ground For Relief:**

The first ground for relief in Petitioner's § 2254 application states:

Conviction by false and/or none existing grand jury indictments.  At the first hearing where evidence for petition was given on August 24, 2004 the state fail to produce a tape, transcript, or grand jury minutes of the April 26, 2001 alleged indictment. Again on November 30, 2004 at second habeas hearing the State fail to produce any grand jury minutes or tapes upon Petitioners request before the Court.

Petitioner asserts this claim was made in his state supplemental petition.   A review of his initial *pro se* state petition, the amended petition submitted by appointed counsel, and petitioner's *pro se* supplemental state petition, however, does not reveal a claim at the state level that the indictment and /or amended indictment did not exist or was  false.   Petitioner's state criminal file contains two original Indictments, signed by the foreperson of the grand jury and file-stamped by the Minnehaha County Clerk of Courts. Petitioner's First Ground For § 2254 Relief regarding the "false

15

and/or non existing grand jury indictments" does not state a federal constitutional claim cognizable in federal habeas proceedings.    Martin v. Solem, 801 F.2d 324, 331 (8th Cir. 1986) (citations omitted).    Petitioner's First Ground For Relief is likewise "plainly meritless." Rhines v. Weber, 125 S.C. 1528, 1535 (2005); 28 U.S.C. § 2254(b)(2).   Petitioner's application will be DENIED on its merits as to the first  ground for relief.

**Petitioner's Second Ground For Relief:**

The second ground for relief in Petitioner's § 2254 application states:

Second conviction obtained by action of a grand jury that was unconstitutionally selected impaneled.  The state fail to produce any tapes transcripts or grand jury minutes of the alleged impaneled grand jury hearing.  This hearing was on April 26, 2001 yet there is no record of the alleged indictment, or grand jury hearing.

Petitioner again asserts this claim was made in his state supplemental petition.  A review of Petitioner's state *pro se* supplemental petition reveals  that ground # 3 in that petition vaguely resembles this ground for relief.  Ground # 3 in Petitioner's state *pro se* supplemental petition asserted the state court violated the Fifth, Sixth and Fourteenth Amendment to the United States Constitution because the "amended indictment counts as presented by the prosecution . . . were never presented in a preliminary hearing which is required by law, SDCL 23a-6-19 . . ."   Judge Kean found that the right to a preliminary hearing is statutory, not Constitutional and that a preliminary hearing need  not be held if the Defendant is indicted before the date set for the preliminary hearing, pursuant to SDCL §§ 23A-4-3.  He also found that SDCL 23A-5-11.1 requires that grand jury witness testimony be recorded, but because no witness testified before the grand jury on April 16, 2001 (when a new Indictment was issued to merely correct the date of the offense alleged in Count 1) no grand jury tape recording was required to be made.  Judge Kean concluded "Johnson's claim of there being no grand jury tape recording for his case on April 26, 2001 does not constitute error of any kind . . . Johnson is required to demonstrate some error of a constitutional dimension which would deprive the trial court of jurisdiction."

Federal law mirrors South Dakota law.  Once a defendant is indicted, the right to a preliminary examination evaporates.  See Fed. R. Crim. P. 5.1.  That Petitioner did not receive a preliminary examination, therefore, is of no legal consequence.   To the extent Petitioner complains

16

about the failure to tape the April 21, 2001 grand jury proceedings, this too fails to rise to a Constitutional violation which justifies habeas relief. See United States v. Mechanik, 475 U.S. 66, 72, 106 S.C. 938, 942-43, 89 L.Ed.2d 50 (1986) (guilty verdict at trial renders harmless "any conceivable error in the charging decision that flowed from" a violation of Fed. R. Crim. P. 6(d)). In Mechanik, the United States Supreme Court explained, "[i]n such a case, the societal costs of retrial after a jury verdict of guilty are far too substantial to justify setting aside the verdict simply because of an error in the earlier grand jury proceedings." Id. See also Fed. R. Crim. P. 6(e)(1) (". . but the validity of a prosecution is not affected by the unintentional failure to make a recording . . .").

Judge Kean explained the purpose of the April 26 Grand Jury and amended Indictment was merely to correct the date of the charge contained in Count 1. All the other charges remained the same as the original Indictment. Ultimately, Count 1 was dismissed, and Petitioner was found guilty of Counts 2, 3 and 4. In light of Fed. R. Crim. P. 6(e) and United States v. Mechanik, 475 U.S. 66, 72, 106 S.C. 938, 942-43, 89 L.Ed.2d 50 (1986) Judge Kean's conclusions regarding Petitioner's second ground for relief are not contrary to and do not involve an unreasonable application of clearly established federal law. Petitioner's application will be DENIED on its merits as to the second ground for relief.

### Petitioner's Third Ground For Relief

The third ground for relief in Petitioner's § 2254 application states:

Denial of Petitioner request that he is allowed to read the pre-sentence report. On April 22, 2002 the Judge Lieberman ask me "is there anything you wish to say?" I ask to read the presentence report before the Court sentence me. The judge ask the State for presentence report, but the State did not produce it. I was denied and still sentence.

Petitioner raised this issued in his initial *pro se* state petition (¶ 10), the amended state petition (¶ 5), and the supplemental *pro se* state petition (¶ 6). The amended and supplemental petitions asserted the inability to read the pre-sentence report deprived Petitioner of due process of law as guaranteed by the Fifth Amendment of the United States Constitution. Judge Kean's Findings of Fact and Conclusions of Law specifically addressed the pre-sentence report issue at length. Judge

17

Kean explained Petitioner was allowed to review the pre-sentence report during the pendency of his state habeas proceedings.  During his second state habeas hearing (held on November 30, 2004), Petitioner testified the pre-sentence report contained certain inaccuracies, and that some of the prior convictions attributed to him were actually his brother's convictions—whose name Petitioner used as an alias.  During the November 30 hearing, however, Petitioner admitted five prior felony convictions in Michigan, and one Michigan felony conviction which occurred in between the two offenses for which he was charged and convicted.  See Finding of Fact No. 98.[1]  Judge Kean concluded that while SDCL § 23A-27-7 requires the sentencing judge to disclose the pre-sentence report to the defendant, and to allow the defendant to introduce testimony regarding any alleged inaccuracies before imposing sentence, Judge Lieberman's failure to do so did not rise to the level of a constitutional violation.  See Conclusion of Law No. 60 ("Johnson was not prejudiced in any way by virtue of not having been allowed to read the presentence report before sentencing.").  After listening  to Petitioner's testimony at the habeas hearing  and considering his lengthy criminal history, Judge Kean determined Petitioner's credibility was "greatly damaged."  See Finding of Fact No. 101.   Judge Kean also concluded Petitioner's sentence would have been the same even if Petitioner had  reviewed his  pre-sentence report  before  sentencing and Judge Lieberman had considered Petitioner's protestations before pronouncing sentence.  See Finding of Fact No. 103. Judge Kean also concluded non-disclosure of a pre-sentence report rises to the level of a constitutional deprivation of due process only if "the report contained inaccurate information which the court relied upon in deciding upon the sentence."  See Conclusion of Law No. 50.

While South Dakota law requires disclosure of the pre-sentence report to the defendant before sentence is imposed,   "[a]  federal court may not issue the writ on the basis of a perceived error of state law."  Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984). Petitioner also alleged his inability to review the pre-sentence report  deprived him of his constitutional due  process rights.  Judge Kean's  factual findings indicate Petitioner's sentence would have been the same even if Petitioner had reviewed his pre-sentence investigation before sentence was imposed.   In other words, no prejudice resulted from the error.  This court must give deference to Judge Kean's factual findings.  28 U.S.C. § 2254(e).   No due process violation arises

---

[1]The transcripts from the two state habeas hearings, held on August 24 and November 30, 2004,  were not made a part of the record.

18

in the absence of a showing of prejudice.  Donnelly v. DeChistoforo, 416 U.S. 637, 648, 94 S.C. 1868, 1873, 40 L.Ed.2d 431 (1974); Pickens v. Lockhart, 4 F.3d 1446, 1453-54 (8th Cir. 1993) cert. den. 510 U.S. 1170, 114 S.Ct. 1206, 127 L.Ed.2d 553 (1994).   See also United States v. Esparza-Gonzalez, 268 F.3d 272, 274 (5th Cir. 2001) cert. den. 535 U.S. 991, 122 S.Ct. 1547, 152 L.Ed.2d 472 (2002) (regarding similar Fed. R. Crim. P. 32(c) "remanding where no prejudice exists would require the district court to undergo an exercise in futility in order to obtain the same sentence."). Judge Kean's factual and legal findings are not contrary to,  nor do they involve an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1).  Petitioner's application will be DENIED on the merits as to the third  ground for relief.

### Petitioner's Fourth Ground For Relief

The fourth ground for relief in Petitioner's § 2254 application states:

Inapproprially (sic) exposed to the jury members during, or before trial.  Jury saw petitioner being locked into a holding cell by a detective.  The jurors question the bailiff about the occupation of the officer.  Because the jury was exposed to this prejudicial information they should have been replaced.  Another jury could have been picked because the trial had not stated (sic) up to that point.

Petitioner raised this issue in his direct appeal, his initial *pro se* state habeas petition (¶ 9), the amended petition (¶ 3), and the *pro se* supplemental petition (¶ 9).  Judge Kean specifically found this issue was briefed to the South Dakota Supreme Court on direct appeal of Petitioner's conviction. See Finding of Fact No. 46, Conclusion of Law No. 19.  Judge Kean dismissed this claim for relief based on the principle of res judicata.  See Conclusion of Law Nos. 15, 16 and 26.

The South Dakota Supreme Court considered the issue, however, on direct appeal and summarily affirmed Petitioner's conviction.  On direct appeal, Petitioner claimed the jury viewing him in the company of the plain-clothed deputy denied him his Sixth Amendment  right to trial by an impartial jury.

After the jury was selected but before the trial began on March 4, 2002, Petitioner was entering a room with a plain- clothed deputy during a recess in the proceedings.  The jury was being escorted by the bailiff out of the jury room toward an elevator and observed the Petitioner entering

19

the room with the plain -clothed deputy. (See trial transcript at pp. 122-128). The deputy did not have a radio, a weapon, or any other equipment which would signify his status as a law officer. Petitioner was also in plain clothes and was not handcuffed or restrained in any way. One of the jurors asked the bailiff who the deputy was, and the bailiff responded she believed he was a court spectator. Id. There was no further discussion about the man with Petitioner in the hallway after the solitary question to the bailiff from the juror. Id. The bailiff immediately reported the incident to the lawyers, and Petitioner's lawyer moved for a mistrial before the trial began. See trial transcript at 128. Judge Lieberman noted that the back hallway where the jury saw the Petitioner was not a secure area where only prisoners are held. He noted a variety of people wander the hallway, from lawyers, to secretaries, to citizens. He noted that the deputy escorting Petitioner had been sitting in the courtroom, as had "Frosty" who is a well-known local court-watcher. See trial transcript at 127, 131. Judge Lieberman concluded it could not be determined Petitioner's right to a fair trial had been compromised, and denied the motion for a mistrial. See trial transcript at 132.

On a § 2254 habeas petition, a district court's review of the state trial court's rulings on juror impartiality is "limited to enforcing the commands of the United States Constitution." Lucero v. Kerby, 133 F.3d 1299, 1308 (10th Cir. 1998) cert. den. 523 U.S. 1110, 118 S.Ct. 1684, 140 L.Ed.2d 821 (1998), citing Mu'Min v. Virginia, 500 U.S. 415, 422, 111 S.C. 1899, 1903, 114 L.Ed.2d 493 (1991). The federal habeas court may reverse a state trial court's findings of juror impartiality only upon a showing of "manifest error." Id.

To establish the state trial court erred by refusing to dismiss an entire jury panel, the Petitioner must demonstrate "either that the trial resulted in actual prejudice or that it gave rise to a presumption of prejudice because it involved such a probability that prejudice will result that it is deemed inherently lacking in due process." Lucero, 133 F.3d at 1308, citing Estes v. Texas, 381 U.S. 532, 542-43, 85 S.C. 1628, 1632-33, 14 L.Ed.2d 543 (1965).

Petitioner has shown neither actual prejudice nor a probability that prejudice resulted from the jury viewing him with the plain-clothed deputy in the back hallway of the courthouse. One juror's single question about the identity of the deputy (which was answered with a benign reply by the bailiff) is not enough to show that the jury drew any conclusions about Petitioner's custodial

20

status, his guilt or innocence, or Judge Lieberman's opinion about his flight risk sufficient to deprive Petitioner of his Sixth Amendment right to trial by an impartial jury.   Neither the trial court nor the South Dakota Supreme Court unreasonably applied clearly established federal law.  Petitioner's application will be DENIED on the merits as to the fourth  ground for relief.

### Petitioner's Fifth Ground For Relief

The fifth ground for relief in Petitioner's § 2254 application states:

> Violation of sequestering order.  After witnesses had been sequestered. The states attorney still brought his eye-witness into the courtroom during motion hearings. Ms. Hayungs was the lone eye-witness for the April 18, 2000 burglary charge.  Ms. Hayungs did not, and could not identify my in photo line-up at that time.  However, Ms. Hayungs was allowed inside the courtroom on March 22, 2001, July 3, 2001 and July 6, 2001 violating the sequester order, and at the same time to identify me at trial later.

Petitioner raised this issue on a motion to suppress at the trial level, on direct appeal (Issue No. 2) in his initial *pro se* state habeas petition (¶ 5), the amended petition (¶ 2) and his supplemental petition (¶ 4).  Judge Lieberman (the trial Judge) granted the motion to suppress in part, and did not allow evidence of Lori Hayungs' second photo line-up identification. He did, however, allow Ms. Hayungs to identify Petitioner in court at trial.  The South Dakota Supreme Court affirmed Judge Lieberman on Petitioner's direct appeal.   Judge Kean (the state habeas Judge) found that Lori Hayungs was present during the various motion hearings, but that no sequestration order was in effect during those hearings.  See Finding of Fact Nos. 25-32.  Judge Kean specifically found that Petitioner's claim regarding Ms. Hayungs' in-court identification after the suppression of the photo identification and attendance at pre-trial motions had already been decided on direct appeal and was therefore barred by res judicata.  See Conclusion of Law No. 9.

Although not stated as artfully as he did in his state petitions, Petitioner really articulates two claims in his fifth ground for relief: (1) that his constitutional right to a fair trial was violated when Ms. Hayungs was allowed to make an in-court identification even though the photo line-up was suppressed, and (2) that his constitutional right  to a fair trial was violated when Ms. Hayungs was allowed to be present during pre-trial motions hearings.

21

The in-court identification issue was argued to Judge Lieberman by way of a suppression motion and briefed to the South Dakota Supreme Court on direct appeal. Judge Lieberman entered Findings of Fact and Conclusions of Law, suppressing the photo line-up evidence but allowing the in-court identification. The South Dakota Supreme Court declined an intermediate appeal on the issue, and summarily affirmed on Petitioner's appeal of his conviction.

The motion hearing transcripts reveal that Lori Hayungs testified regarding her identification of Petitioner as the perpetrator of the Child Services burglary (Count 2 of the Indictment) at a motions hearing on August 17, 2001. Motions Hearing TR 8-60.  Judge Lieberman found the following facts:  Lori Hayungs entered her supervisor's office and found a black male rummaging through her supervisor's purse.  The man stood up and was face to face with Ms. Hayungs, at a distance of two to three feet. Ms. Hayungs spoke briefly to the man, who smiled and spoke briefly to her before he brushed past her and walked out the office door. Ms. Hayungs realized something was wrong and that she needed to be able to remember what the intruder looked like. She called out to her coworkers to get a paper and pen because she intended to try to get his license plate number. She could not get a license number because the man's car was dirty. She could only describe his vehicle.  She followed him closely as he exited the business.  She looked at him from a relatively short distance as he left, and he turned to look at her twice.  The entire incident lasted approximately two minutes.  She had three good opportunities to view his face.  She focused on his face, which she described as round or orange shaped, and noted there was something wrong with his teeth, such as a missing tooth or gap or a different colored dental cap.  She got the opportunity to look at the man from all sides at a relatively close distance.  The incident occurred in the late morning hours, with good lighting conditions.  Shortly after the incident, she was 100% confident she would be able to recognize the man if she ever saw him again and her confidence did not diminish "hardly at all" as time passed. Ms. Hayungs described the perpetrator as a black male, late 20's, with short black hair, without facial hair or glasses, 5'7" to 5'9", weighing about 250 pounds and being stocky but not muscular.

Judge Lieberman further found: the evidence introduced at the hearing (color copies of Defendant's South Dakota Identification Cards issued on May 19, 1999 and September 17, 1997)

22

show Defendant to be 5'11" and 222 pounds and 42 years old. The photos show his face has fluctuated in terms of fleshiness and the two photos appear to be significantly different.

Judge Lieberman noted Ms. Hayungs observes people for a living. Detective Doug Simmons showed a photo lineup containing Petitioner's photograph to Ms.Hayungs on April 25, 2000. The photo lineup was created using all black and white photos except Petitioner's, then the line-up was photocopied so all the photos would appear black and white. The result was a photo line-up which lacked clarity, depth and facial feature definition. Ms. Hayungs was unable to make an identification from the black and white photo line-up. One of the color photos of Petitioner slipped from Detective Simmons' file after the line-up, and Ms. Hayungs saw it. Upon seeing the color photo of Petitioner, Ms. Hayungs immediately said "that's the guy!" Even though she clearly remembered the perpetrator, she could not make an identification from the black and white photocopied line-up. Ms. Hayungs identified two photos from the black and white photo line-up which contained facial features resembling the perpetrator, but she could not make an identification from the black and white line-up.

Judge Lieberman also noted Ms. Hayungs viewed another photo lineup in March, 2001. The second photo line-up contained color photos, and Petitioner's photo was placed in the same position (lower left) as it had been in the earlier black and white photo copy line up a year earlier. Ms. Hayungs immediately identified the Petitioner as the perpetrator when she viewed the second photo line-up. Ms. Hayungs believes her memory of the Petitioner's appearance stems from when she first saw him and focused on him on April 18, 2000, and not from any of the photographs she has seen of him. The photos used in the April, 2000 and March, 2001 line-ups were different photos, but they were placed in the same position (lower left) in both photo line-ups.

Judge Lieberman found that because Ms. Hayungs inadvertently saw a single color photo of Petitioner in Detective Simmons file, and because Petitioner was the only person who appeared in both the photo line-ups, and his photo occupied the same position in both line-ups, the photo line-up procedure was impermissibly suggestive. Judge Lieberman further found, however, that Ms. Hayungs was a "very impressive witness" because she was quite educated, articulate, and she "made it her business" to remember the perpetrator. Judge Lieberman concluded the "impermissible

23

suggestiveness of the April 25, 2000 and March 7, 2001 lineup procedures was almost completely dissipated or purged and did not taint Hayungs' in court -identification of the Defendant on August 17, 2001." He further observed "Hayungs' strong memory of the incident on April 18, 2000 and the appearance of the perpetrator thereof constitutes a reliable and independent source for her in -court identification of Defendant on August 17, 2001."

Regarding the use of pre-trial photo line-ups and in-court identification, the United States Supreme Court has explained that each case must be evaluated on its own facts. "[C]onvictions based on eyewitness identification at trial following a pretrial identification by a photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to the very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.C. 967, 971, 19 L.Ed.2d 1247 (1968). Accord, United States v. Mears, 614 F.2d 1175, 1177 (8th Cir. 1980) cert. den. 446 U.S. 945, 100 S.Ct. 2174, 64 L.Ed.2d 801 (1980) ("an in-court identification will not be held to be tainted by an invalid display if a sufficient basis for courtroom identification independent of any improper photo display exists. Indeed, unnecessarily suggestive pretrial confrontation procedures, standing alone, do not violate due process; reliability is the linchpin in determining the admissibility of identification testimony."). To determine whether an identification procedure would create a substantial likelihood of irreparable misidentification, the court considers factors such as the witness's opportunity to view the suspect during the commission of the crime, her degree of attention, the accuracy of her prior description of the suspect, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. United States v. Martin, 391 F.3d 949, 953 (8th Cir. 2005).

The Court has carefully reviewed the transcripts of the motions hearing and the jury trial. The State court's factual findings regarding the reliability of Ms. Hayungs' in-court identification of the Petitioner as the perpetrator of the Child Services burglary finds fair support in the record. Likewise, the Court is not persuaded either the trial court or the South Dakota Supreme Court court's resolution of the in-court identification issue was contrary to nor did it involve an unreasonable application of clearly established federal law.   Petitioner's application will be DENIED on the merits as to this portion of the fifth ground for relief.

24

Judge Kean addressed the sequestration issue in his Findings of Fact and Conclusions of Law dated April 4, 2004. Judge Kean found Lori Hayung was present for pre-trial hearings on July 3, 2001 and August 17, 2001, and for the jury trial. Judge Kean found "there was no motion or order for sequestration, verbal or written, for any pretrial hearing." See Finding of Fact No. 32.[2] Judge Kean found that Ms. Hayungs remained in the courtroom after her testimony during the August 17 motion hearing, but left at the request of defense counsel after a bench hearing. See Finding of Fact No. 34. Judge Kean apparently concluded the sequestration issue was part and parcel of the in-court identification issue which had been determined on direct appeal, and was thus barred from further determination at the state habeas level by principle of res judicata.

SDCL § 19-14-29 is similar to Fed. R. Evid. 615 and provides:

At the request of a party, witness testifying at the trial, hearing or deposition shall be excluded so that they cannot hear the testimony of other witnesses, and the court may make such order of its own motion. This section does not authorize exclusion of:

(1)    A party who is a natural person;

(2)    An officer or employee of a party which is not a natural person designated as its representative by its attorney;

(3)    A person whose presence is shown by a party to be essential to the presentation of his cause; pr

(4)    A victim of a crime and his parent or guardian following the victim's testimony.

Even assuming a sequestration order was in effect during the motions hearings, Petitioner is not entitled to habeas relief unless violation of the order was "so prejudicial as to call into question the fundamental fairness of [the] state trial." Ashker v. Class, 152 F.3d 863, 872-73 (8th Cir. 1998). When a sequestration order has been unintentionally violated, striking the testimony of the witness or declaring a mistrial are inappropriate sanctions. Instead, "full-bore cross-examination" of the witness about the non-sequestration is appropriate. United States v. Jiminez, 780 F.2d 975, 981 (11th Cir. 1986).[3] See also United States v. Stacey, 452 F.2d 1204 (5th Cir. 1971) (failure to sequester

_____

[2]A sequestration order was entered at the beginning of the jury trial ( Trial TR 4) but Petitioner does not assert Ms. Hayungs was not properly sequestered during trial.

[3]The Court notes Ms. Hayungs was cross-examined at trial about her presence in the courtroom at the pre-trial hearings. Trial TR 195-198, 203, 215.

witness did not rise to level of denial of due process); <u>Mathis v. Wainwright</u>, 351 F.2d 489 (5th Cir. 1965) <u>cert.</u> <u>den.</u> 384 U.S. 1009, 86 S.Ct. 1960, 16 L.Ed.2d 1021 (1966) (trial court's failure to sequester witnesses "does not raise a question that can be reached by federal habeas corpus since such does not amount to a deprivation of [the petitioner's] constitutional rights."). The Court has carefully reviewed the motion hearing transcripts. Judge Kean's factual finding regarding the absence of a sequestration order during the motions hearings has a fair support in the record. The state court's decision to allow Ms. Hayungs to testify despite her earlier presence at pre-trial motions is not contrary to nor did it involve an unreasonable application of clearly established federal law. Petitioner's application be DENIED on the merits as to this portion of the fifth ground for relief.

### Petitioner's Sixth Ground For Relief

The sixth ground for relief in Petitioner's § 2254 application states:

> States attorney tampered with, or improperly influenced eye-witness. Ms. Hayungs testified under oath at Petitioner's trial that she did in fact change her testimony. This was did because the State's attorney told her that Petitioner would be charged with other crimes. Ms. Hayungs falsely, or lied to Grand Jury, or trial court. <u>She admits.</u>

Petitioner sixth ground for relief vaguely resembles his second and third grounds for relief in his initial state habeas petition. Petitioner also made this claim in ¶ 10 of his supplemental state petition, where he alleged a due process violation. It does not appear that Judge Kean addressed this ground for relief in his Findings of Fact and Conclusions of Law based on his conclusion it was sufficiently similar to Petitioner's other allegations. <u>See</u> Finding of Fact No. 52.

While this claim was not technically exhausted at the state level, it may nonetheless be dismissed if it is plainly meritless. <u>Rhines v. Weber</u>, 125 S.C. 1528, 1535 (2005). 28 U.S.C. § 2254(b)(2). The gravamen of Petitioner's sixth ground for relief is the Petitioner was denied due process because Ms. Hayungs lacked credibility.

Ms. Hayungs' trial testimony reveals that she first learned Petitioner would be charged with the Queen City Wholesale burglary during her Grand Jury testimony on March 15, 2001. Trial TR 197. On cross-examination of Ms. Hayungs, defense counsel emphasized the State's attorney was

26

present for the Grand Jury proceedings, but defense counsel was not.  Trial  TR 212.   On direct examination, Ms. Hayungs testified  that she knew Petitioner did not belong in the office and she made a conscious decision to focus on the details of the event.  Trial TR 181.  On cross-examination, she stated would not normally make a conscious effort to remember the details of the face of someone who came into Child Services–a salesman, for instance.  Trial TR 211.  She testified at the Grand Jury, however, that she "thought maybe he could have been a salesman so I stepped aside and let him go find Kim." Trial TR 213.  Petitioner's interpretation of the above set of circumstances is that State's attorney's presence at the Grand Jury proceedings in the absence of defense counsel was improper, resulted in "witness tampering" and that Ms. Hayungs'  Grand Jury testimony  that Petitioner was a salesman so damaged her credibility that her in-court identification should have been disallowed by Judge Lieberman, or disregarded by the jury.

    "Assessing the credibility of witnesses is a matter properly left to the jury." United States v. Exson, 328 F.3d 456, 460 (8th Cir. 2003) cert. den. 540 U.S. 1011, 124 S.Ct. 549, 157 L.Ed.2d 421 (2003) (citations omitted).  Also, "the jury is exclusively responsible for determining the credibility of a witness, and a habeas court may not revisit the fact -finder's credibility determinations." McCullough v. Filion, 378 F.Supp.2d 241, 253 (W.D.N.Y.) 2005) citing Marshall v. Lonberger, 459 U.S. 422, 432-35, 103 S.C. 843, 74 L.Ed.2d 646 (1983) (stating, "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.").

    The jury considered the difference between Ms. Hayungs' Grand Jury testimony and her testimony at trial, and this Court may not revisit the jury's credibility finding on habeas review.  The trial court instructed the jury regarding eye-witness testimony (Instruction No. 31) and the credibility of witnesses (Preliminary Instructions, ¶¶ 11 and 12).  Judge Lieberman's failure to strike Ms. Hayungs' testimony, therefore,  does not rise to the level of a denial of Petitioner's due process rights.  Petitioner's application will be DENIED on its merits as to the sixth ground for relief.

**Petitioner's Seventh Ground For Relief**

The seventh ground for relief in Petitioner's § 2254 application states:

In-court identification.  Ms. Hayungs was not able to identify petitioner at time of crime on crime on April 18, 2000, yet the Court allowed her to identify petitioner in-court over a year later, after she saw him in court a few times before.  Ms. Hayungs testified on August 17, 2001.

This issue is duplicative of those raised in Petitioner's fifth ground for relief.  For the same reasons, Petitioner's application will be DENIED on its merits as to the seventh ground for relief.

**Petitioner's Eighth Ground For Relief**

The eighth ground for relief in Petitioner's § 2254 application states:

Severing of two burglarys (sic).  The Petitioner was charged with an alleged burglary 2nd degree March 5, 2001.  The State charged Petitioner with another 2nd degree burglary, but this charge alleged April 18, 2000 a year before.  These two crimes clearly had nothing to do with each other, yet the state joinder (sic) these incidents.

Petitioner raised this issue in his direct appeal, his initial *pro se* state habeas petition (¶ 7), his amended petition (¶1) and his supplemental petition (¶8).  The South Dakota Supreme Court affirmed Petitioner's conviction on direct appeal.  Judge Kean concluded the issue was barred on state habeas review by the principle of res judicata.  See Finding of Fact No. 49, Conclusion of Law Nos. 19, 26, 26.

In his amended and supplemental state habeas petitions, Petitioner asserted the failure to sever the two burglary charges violated his Fifth Amendment rights.  Petitioner's counsel made this argument to the trial court through a motion to sever.  The trial held a hearing on the motion to sever on September 24, 2001.  Ultimately, the trial court refused to sever the two burglary counts, and the South Dakota affirmed the trial court on direct appeal of Petitioner's conviction, stating "the issues on appeal are clearly controlled by settled South Dakota law or federal law binding upon the states . . ."

Even when evidence of one crime presented in a trial of two offenses would not be admissible in a separate trial of the other crime "the federal courts have found no prejudicial effect

28

from joinder when the evidence of each crime is simple and distinct . . .this rests on the assumption that, with a proper charge, the jury can easily keep such evidence separate in their deliberations and, therefore, the danger of the jury's cumulating the evidence is substantially reduced." Closs v. Leapley, 18 F.3d 574, 578 (8th Cir. 1994) (citations omitted).  The evidence from the Child Services and Queen City burglaries was simple and distinct enough that there was no reasonable possibility of juror confusion or undue influence of one set of charges upon the verdict for the other.  Also, the state court's instructions distinguished clearly between the charges and explicitly directed the jury to consider each of the offenses separately.  As in Closs there was no deprivation of due process in the state court's failure to sever the charges on the basis of possible prejudice arising from jury confusion or undue influence created by the separate charges.

During the hearing on the motion to sever, Petitioner's defense counsel also raised the issue of Petitioner's possible desire to testify in his own defense at trial regarding one charge, but not the other.  (He did not testify).  "Prejudice sufficient to require separate trials on that basis, however, may be established only by a persuasive and detailed showing regarding the testimony that the defendant would give on the one count he wishes severed and the reason he cannot testify on the other counts."  Closs, 18 F.3d at 578.  No such specific showing was made, either during the motion hearing nor in any of the briefs that were filed at the state level.  Petitioner's counsel simply stated, "But ultimately I'm just afraid his rights will be prejudiced if he wants to take the stand and he won't feel like it because he'll be facing both of them together.  If he wants to take the stand on the Child Services case, but not take the stand on the other one because his past record will be brought up by the prosecution, he'll be caught between a rock and a hard place.  He won't have that right any more and ultimately that's what we're asking you to protect, Judge."  There was never any unequivocal statement, therefore, that Petitioner would have testified on his own behalf on either charge.  Under such circumstances "there was no deprivation of due process in the state court's failure to grant separate trials on the basis of [Petitioner's] compromise of his right against self-incrimination."  Closs, 18 F.3d at 579.  Petitioner's application will be DENIED on its merits as to the eighth ground for relief.

29

**Petitioner's Ninth Ground For Relief**

The ninth ground for relief in Petitioner's § 2254 application states:

Prosecutorial over-charging.  There was nothing burglarized.  I had a right to be in the building I was in.  Queen City was open for business at the time of crime.  There was no unlawfully remaining in the building, nor did I enter the building unlawfully. On the April 18, 2000 burglary charge the state made up everything.

This ground was not raised in Petitioner's direct appeal, his initial *pro se* state habeas petition, his amended petition, or his supplemental petition.  Although he attempts to articulate a claim based on constitutional insufficiency of the evidence, Petitioner's ninth ground for § 2254 relief does not state a federal constitutional claim cognizable in federal habeas proceedings.  Martin v. Solem, 801 F.2d 324, 331 (8th Cir. 1986) (citations omitted).        See also Ford v. Norris, 364 F.3d 916, 919 (8th Cir. 2004) (explaining "the law if this circuit requires that the applicant for a writ of habeas corpus refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent constitutional issue in state court before we will evaluate a claim . . . not once in either state court or federal court did [petitioner] argue that the prosecution's statements themselves violated the United States Constitution . . .").  Based on a review of the trial transcript, Petitioner's  ninth ground  for relief is likewise "plainly meritless." Rhines v. Weber, 125 S.C. 1528, 1535 (2005); 28 U.S.C. § 2254(b)(2).  Petitioner's application will be DENIED  on its merits as to the ninth  ground for relief.

**Petitioner's Tenth Ground For Relief**

The tenth ground for relief in Petitioner's § 2254 application states:

Conviction obtained by an all white jury, and not my peers.  There was no African American on the jury, and the jury was exposed to prejudicial information.

Petitioner did not explicitly raise this ground for relief in his state habeas petition.  He did vaguely mention it in his *pro se* supplemental petition (¶ 8) when he asserted the burglary charges were improperly joined in violation of the Fifth Amendment, and "this was even more prejudicial against petitioner because he is a black man being tried by an all white jury . . ."

30

The state courts decided the joinder of the burglary charges did not violate the Petitioner's due process rights.  Because Petitioner did not specifically raise the racial makeup of the jury in his state habeas proceedings or on direct appeal, the issue was not directly addressed.  The trial court did address the racial makeup of the jury during the trial, however.  A hearing was held outside the presence of the jury after voir dire, but before the final jury selection, regarding the prosecutor's intention to strike the lone African American member of the panel.  Defense counsel raised a <u>Batson</u> challenge.  <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S.C. 1712, 90 L.Ed.2d 69 (1986).  The prosecutor explained his intent to strike the juror before he ever knew of his race, based on the "flippant" answers on his juror questionnaire.  (Trial TR 110).  The prosecutor also explained he observed the juror (Clark) make eye contact with and speak to the Petitioner when the jurors entered the courtroom.  (Trial TR 112).  During voir dire, the juror indicated he knew the Petitioner through his girlfriend, and had given him rides in the past.  (Trial TR 113).  Judge Lieberman found the defense had not presented a prima facie case of purposeful discrimination under <u>Batson,</u> and the prosecution and presented race-neutral reasons for Juror Clark's dismissal.  (Trial TR 114).

Because Petitioner did not specifically raise the issue of the racial makeup of the jury in his state habeas papers, he has not exhausted this claim.  It may be denied on its merits nonetheless, if it is "plainly meritless."  <u>Rhines v. Weber</u>, 125 S.C. 1528, 1535 (2005); 28 U.S.C. § 2254(b)(2)**.** The Sixth Amendment guarantees a criminal jury "composed of a fair cross-section of the community."  <u>Wharton-El v. Nix</u>, 38 F.3d 372, 376 (8th Cir. 1994) <u>cert. den</u> 513 U.S. 1162, 115 S.Ct. 1126, 130 L.Ed.2d 1088 (1995).  Petitioner must establish the following to show a violation of his Sixth Amendment guarantee to a jury composed of a fair cross section of the community: (1) that African Americans are a distinctive group in the community;[4] (2) that the representation of African Americans in jury pools is not fair and reasonable in relation to the number of African Americans in the community; and (3) that this under representation is due to systematic exclusion of African Americans in the jury selection process.  <u>Id.</u> (citations omitted).  Petitioner has made none of these showings.  As in <u>Wharton-El</u>, Petitioner has "simply shown that no African Americans sat on his

---

[4]According to the U.S. Census Bureau, <u>www.factfinder.census.gov,</u> 1.5% of the population of Minnehaha County, South Dakota listed their race as "black or African American" in the year 2000 (the most recent statistics available–and fairly close in time to when Petitioner's trial occurred in March, 2002).

jury." Id. at 376.  Absent some further showing, the Court "cannot conclude that a systematic exclusion occurred or that [Petitioner's] right to an impartial jury was violated."  Petitioner's application will be DENIED on the merits as to the tenth ground for relief.

**Petitioner's Eleventh Ground For Relief**

The eleventh ground for relief in Petitioner's § 2254 application states:

Conviction obtained by a manufactured home made video tapes.  Prosecution video taped crime scenes only two days before trial.  The jury saw the tapes as the prosecution narrated them.  Petitioner was not permitted pre-trial disclosure of these videotapes.

Petitioner raised this issue in his initial *pro se* state habeas petition (¶ 8), and his *pro se* supplemental petition (¶ 5).  In his supplemental petition, Petitioner asserted the video tapes were "absolutely necessary to prove an element of the crimes" and their admission into evidence at trial violated his due process and equal protection rights.  Judge Kean addressed this issue in the context of Petitioner's ineffective assistance of counsel claims.  Judge Kean found the crime scene videotapes were factually based, relevant to the issues at trial, and helpful to both the witnesses in explaining what occurred and to the jury in understanding the evidence.  See Finding of Fact No. 123.  Judge Kean also found the trial court did not abuse its discretion by admitting the tapes.  See Finding of Fact No. 124.  He further found the admission of the tapes did not violate any of Petitioner's rights, nor did it constitute a violation of Due Process or any other constitutional right.  Finding of Fact No. 125, Conclusion of Law No. 90, 91.

The videotapes to which Petitioner refers were introduced at trial to depict the crime scenes, and were narrated by Ms. Hayungs (Child Services) TR 190-194, and Tim Wehrkamp (Queen City).  TR 246-249.  "A state court's evidentiary rulings can form the basis for habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process."  Osborne v. Purkett, 411 F.3d 911, 916 (8th Cir. 2005) (citations omitted).  See also Duckett v. Mullin, 306 F.3d 982, 999-1000 (10th Cir. 2002) cert. den. 538 U.S. 1004, 123 S.Ct. 1911, 155 L.Ed.2d 834 (2003) (admission of police-made video tape of bloody crime scene was not so unduly prejudicial as to render proceedings against habeas petitioner fundamentally unfair).  While Petitioner alleges he was "not allowed pre-trial disclosure"

of the videotapes, defense counsel indicated at trial that he had already viewed them (TR 190). In light of their relevance and obvious admissibility, that Petitioner did not preview the videotapes did not fatally infect the validity of the trial or deprive Petitioner of due process. The state court's findings regarding admission of the videotape are not contrary to nor do they  involve  an unreasonable application of clearly established federal law. Petitioner's application will be DENIED on its merits as to the eleventh ground for relief.

### Petitioner's Thirteenth Ground For Relief[5]

The thirteen ground for relief in Petitioner's § 2254 application states:

> Denial of effective assistance of counsel. Not attempting to impeach Ms. Hayungs testimony after she admitted to changing her testimony. Not informing the jury the absolute elements of second degree burglary. Not asking questions of witness prepared by petitioner prior to trial as agreed on, and ordered by court.

Petitioner raised ineffective assistance of counsel in his initial *pro se* state habeas petition (¶ 12), his amended petition (¶ 6), and his supplemental *pro se* petition (¶ 1). The specific complaints Petitioner raises in his § 2254 application were raised in his supplemental *pro se* petition at the state level. Judge Kean entered Findings of Fact and Conclusions of Law regarding Petitioner's ineffective assistance claims and addressing his disagreement with his counsel regarding trial strategy. See Finding of Fact Nos. 63-65, 107-115, Conclusions of Law Nos. 62-91. Judge Kean did not address the particular claims Petitioner raises in his § 2254 application. Judge Kean did note, however, that "a difference of opinion on tactics and strategy is not ineffective counsel." Conclusion of Law No. 75.

To establish an ineffective assistance of counsel claim, Petitioner must (1) establish counsel's representation fell below an objective standard of reasonableness and (2) show the deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.C. 2052, 80 L.Ed.2d 674 (1984). To demonstrate prejudice, Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

---

[5]Petitioner did not cite a twelfth ground for relief. His handwritten petition skips from ground eleven to ground thirteen.

33

Id., 466 U.S. at 694, 104 S.C. at 2052.  The Court must begin by presuming trial counsel was effective, and strategic choices are entitled to great deference.  Boyd v. Minnesota, 274 F.3d 497, 502 (8th Cir. 2001).

None of Petitioner's three stated grounds for dissatisfaction with his trial counsel's performance meet the first prong of the Strickland test.  A review of the trial transcript reveals Petitioner's counsel did cross-examine Ms. Hayungs regarding the difference between her Grand Jury and trial testimony (Trial TR 211).  Counsel reiterated the discrepancy during his closing argument (Trial TR 384).  While defense counsel did not emphasize *each* of second degree burglary elements during his closing argument, Judge Lieberman clearly instructed the jury regarding the necessary elements for both second degree burglary charges.  See Jury Instruction Nos. 23 and 24, 26, 29.  Defense counsel chose instead to focus his closing argument on whether, for the Queen City burglary, Petitioner entered the building with the intent to commit theft.  Defense counsel's focus for the Child Services burglary was whether the state had proven identity beyond a reasonable doubt, and he argued the inherent unreliability of eyewitness testimony.  See Trial TR 381.  Petitioner does not specify which questions he prepared and desired defense counsel to ask.  Judge Kean's Findings of Fact mention Petitioner's desire to impeach prosecution witness Tim Wehrkamp, but Judge Kean also noted "[Petitioner's] desire to impeach Wehrkamp could not be fulfilled, with or without assistance of counsel, because such evidence is simply not admissible for that purpose or any conceivable purpose."  See Finding of Fact No. 65.  Judge Kean also noted Petitioner's desire to discard trial counsel's success in the suppression of Lori Hayungs' photo line-up identification.  See Finding of Fact No. 63.  The trial transcript reveals a disagreement between petitioner and his counsel regarding whether Lori Hayungs should be questioned regarding the photo line-up identification (evidence which had been ruled inadmissible by Judge Lieberman).  Trial TR 7-8.

"It is all to tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all to easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  Strickland v. Washington, 466 U.S. 668, 689, 104 S.C. 2052, 2065, 80 L.Ed.2d 674 (1984).  Petitioner's disagreement with his trial counsel's strategic decisions do not entitle him to habeas relief unless trial counsel's performance was objectively unreasonable.  The Court has carefully reviewed the trial

34

transcript and the state habeas decision.  Petitioner's trial counsel's performance was not objectively unreasonable.  The state court's finding that Petitioner was not denied effective assistance of counsel is not contrary to and does not  involve  an unreasonable application of clearly established federal law.  Petitioner's application will be DENIED on its merits as to the thirteenth ground for relief.

### Petitioner's Fourteenth Ground For Relief

The fourteenth ground for relief in Petitioner's § 2254 application states:

Unlawfully sentencings.  "The court said I was found guilty of two counts of burglary in the third degree."[6]  The court imposed 15-years in penitentiary and suspended 8-years for the Queen City Wholesale case of third degree burglary. (Page 24 of sentence transcript)

Petitioner raised this ground for relief in his initial *pro se* state habeas application (¶ 11) and his *pro se* supplemental application (¶ 11).  Judge Kean found the sentences imposed by the trial court were less than the maximum possible penalty allowed by South Dakota law for second degree burglary, and were therefore not grossly disproportionate.  See Finding of Fact Nos. 131-132, Conclusion of Law Nos. 102-106.

To prove his   sentence violates the Constitution, Petitioner must show it is "grossly disproportionate to the crime . . ." Ramos v. Weber, 303 F.3d 934, 937 (8th Cir. 2002) cert. den. 537 U.S. 1213, 123 S.Ct. 1309, 154 L.Ed.2d 1063 (2003).  In determining whether a sentence is grossly disproportionate, the gravity of the offense is compared to the harshness of the penalty imposed.  Id. In evaluating the gravity of the offense, the Court evaluates the harm caused or threatened to the victim or society and the defendant's culpability or degree of involvement.  Id.   Culpability is determined by the Petitioner's intent and motive in committing the crime.  Id.

---

[6]Judge Lieberman initially mis-spoke when he imposed Petitioner's sentence, and stated Petitioner had been found guilty of two counts of burglary in the third degree.  Sentencing TR 23. The state's attorney reminded Judge Lieberman Petitioner had been convicted of second degree burglary, and Judge Lieberman corrected himself on the record.  Sentencing TR 23.  Judge Lieberman then imposed sentence of  two fifteen year terms in the penitentiary  to be served consecutively, with eight years suspended on each sentence.  TR 23-25.

At the sentencing hearing, Judge Lieberman commented that Petitioner was a "professional criminal" who had chosen to spend his life as a thief since 1975.  TR 20-21.  He believed the evidence against Petitioner was "overwhelming."  TR 21.  Intent to commit theft is a required element of second degree burglary  (see Jury Instruction Nos. 22, 23 and 24).  The jury, by its verdict, found intent beyond a reasonable doubt.  When Judge Lieberman imposed two fifteen year sentences with eight years suspended on each he explained "so what it comes down to, sir, you have 14 years to serve, and then you have 16 years hanging over your head to hopefully encourage you not to steal in the future."  Sentencing TR at 24.

South Dakota has determined that second degree burglary justifies a maximum possible penalty of fifteen years imprisonment and a fifteen thousand dollar fine.  See SDCL §§ 22-6-1(5) and 22-32-3.  "Legislatures are entitled to wide latitude in prescribing punishments."  Ramos, 303 F.3d at 938.  Petitioner was not given the maximum sentence, despite his lengthy criminal history.[7] Because his sentence is not too severe given his crimes, it is unnecessary to compare it to those of other offenders or other jurisdictions.  Id.  The state habeas court's rejection of Petitioner's excessive sentence claim is neither contrary to nor an unreasonable application of clearly established federal law.  Petitioner's application will be DENIED on its merits at to the fourteenth ground for relief.

---

[7]In his letter opinion, Judge Kean noted the irony in Petitioner's sentencing argument, in light of the state's failure to re-file habitual offender information which would have greatly enhanced the sentence–potentially to life in prison.

36

## CONCLUSION AND ORDER

The Court finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right" and thus a certificate of appealability will not be issued in Petitioner's case. 28 U.S.C. § 2253(c)(2). Although 28 U.S.C. § 2253(c)(2) has been found to be "only a modest standard," Petitioner has not shown that "the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement or to proceed further.'" Randolph v. Kemna, 276 F.3d 401, 403 n.1 (8th Cir. 2002) (citations omitted).

Accordingly, for the reasons stated,

IT IS ORDERED:

(1)     Respondent's Motion to Dismiss (Doc. 14) is GRANTED;

(2)     Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1) is DENIED with prejudice;

(3)     A Certificate of Appealability is DENIED;

(4)     Petitioner's Motion for Appointment of Counsel (Doc. 16) and Motion to Amend/Correct (Doc. 18) are DENIED.

Dated this _____ day of March, 2006

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
(SEAL)        DEPUTY

37